## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RUTH GLADSTEIN,
  *Plaintiff,*

  v.                                    No. 3:18-cv-926 (VAB)

SARANN GOLDFIELD, *et al.*,
  *Defendants.*

### RULING AND ORDER ON MOTION TO DISMISS

Ruth Gladstein has sued Sarann Goldfield, Alvin Goldfield[1] (the "Goldfields"), Martin

Wolf, Esq., and Cohen and Wolf, P.C. (with Mr. Wolf, the "Wolf Defendants") (collectively,

"Defendants"). She alleges intentional interference with inheritance, undue influence or

coercion, fraudulent concealment, civil conspiracy, reckless indifference, larceny, intentional

infliction of emotional distress, and negligent infliction of emotional distress against Defendants;

negligence and breach of fiduciary duties against the Wolf Defendants; and negligence and

breach of fiduciary duties against the Goldfields.

The Wolf Defendants have moved to dismiss for lack of subject matter jurisdiction and

failure to state a claim upon which relief may be granted.

For the following reasons, the motion to dismiss is **GRANTED**.

---

[1] On July 1, 2020, the Estate of Alvin Goldfield was substituted as a party for Mr. Goldfield. Order Granting Second
Mot. to Substitute Party, ECF No. 100 (July 1, 2020).

## I.      FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations[2]

Ruth Gladstein lives in Henderson, Nevada. Compl. at 4 ¶ 1, Notice of Removal, ECF
No. 1 at 7 (May 6, 2018). Martin Wolf is a Connecticut resident and attorney employed by
Cohen and Wolf, P.C., which has its principal office in Bridgeport, Connecticut. *Id.* at 4 ¶¶ 2, 3.
The Wolf Defendants "maintain[] a legal practice in the area of Trusts and Estates." *Id.* at 5 ¶ 3.
Sarann, also known as Saranne, Goldfield and Alvin Goldfield were married, and were residents
of Lexington, Massachusetts. *Id.* at 5 ¶ 5.

Ms. Gladstein and Ms. Goldfield "are the daughters of Frances Klavir, and were both
named beneficiaries of the estate . . . and . . . Living Trust created on behalf of Frances Klavir"
(the "Living Trust"). *Id.* at 5 ¶ 6. Both are contingent residual beneficiaries of their mother's
revocable inter vivos trust.[3] *Id.*; *see also* Ex. A: Frances Klavir Edelstein Living Trust, ECF No.
at 38–58 (Oct. 2, 1992) ("Trust Agreement"); Ex. B: Second Amend., ECF No. 77-1 at 58–62
(June 4, 1997) ("Second Amend.").

---

[2] All factual allegations are drawn from the Complaint, documents incorporated therein by reference, and matters in
the public record of which the Court takes judicial notice. *See Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99,
107 (2d Cir. 1999) ("In adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts
stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by
reference, and to matters of which judicial notice may be taken." (internal citation and quotation marks omitted));
*see also In re Howard's Exp., Inc.*, 151 F. App'x 46, 48 (2d Cir. 2005) (taking judicial notice of bankruptcy court
docket and filings); *see also* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to
reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be
accurately and readily determined from sources whose accuracy cannot reasonably be questioned.").

[3] A revocable inter vivos trust is "a trust set up during lifetime . . . which the grantor is at liberty to revoke at any
time." REVOCABLE TRUSTS AND TRUST ADMIN. IN CONN. § 1:3. The Court refers to the trust documents filed with
the Wolf Defendants' motion to dismiss. *See* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by
reference elsewhere in the same pleading or in any other pleading or motion. A copy of a written instrument that is
an exhibit to a pleading is a part of the pleading for all purposes."); *Roth v. CitiMortgage Inc.*, 756 F.3d 178, 180 (2d
Cir. 2014) (noting that consideration of a complaint is limited "to the factual allegations in [the] . . . complaint,
which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to
matters of which judicial notice may be taken, or to documents either in plaintiffs' possession or of which plaintiffs
had knowledge and relied on in bringing suit" (quoting *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.
1993))]

Ms. Gladstein disputes the validity and/or authenticity of a June 4, 1997 Second Amendment (the "Second Amendment") to the Living Trust, which was originally dated October 2, 1992. Compl. at 5 ¶¶ 7, 8. The Second Amendment allegedly changes, "for the very first time . . . the request or disbursement of the Trust proceeds between Frances Klavir's two daughters from a 50/50 share to one of 90/10, in favor of" Ms. Goldfield. *Id.* at 6 ¶ 9. Defendants also allegedly "proffered a new 'Last Will and Testament of Frances Klavir' [(the "Klavir Will")] bearing the same date as the purported 'Second Amendment.'" *Id.* at 6 ¶ 10. According to Ms. Gladstein, their mother "had expressed to the Plaintiff, the Defendants, and to Plaintiff's family on numerous occasions that she intended that both of her daughters . . . should be the beneficiaries of her estate, in equal shares." *Id.* at 22 ¶ 56.

Ms. Gladstein alleges several irregularities with the execution and witnessing of the Second Amendment and Klavir Will: that the signatures of Ms. Klavir "are clearly misspelled in at least eight separate places;" the "same misspelling appears on the typed form of the document, prepared by [Mr.] Wolf;" only one of the three signatures on the Second Amendment was properly witnessed; there are two originals of the Second Amendment with slight differences; there is no proper notary seal on the Second Amendment; and "the signatures of the purported notary appear to be significantly different from page to page." *Id.* at 6 ¶¶ 11–13.

Ms. Gladstein claims that the Second Amendment and Klavir Will "were signed when Frances Klavir was not of sound mind and was not legally competent to execute said documents." *Id.* at 7 ¶ 14. Defendants allegedly took no "steps to have Frances Klavir examined by . . . any health professional[] at or near the time of the purported execution of [these] two documents . . . , nor were any other reasonable steps taken to determine whether Frances Klavir was of sound mind and legally competent to execute the subject documents." *Id.* at 7 ¶ 15. "This

is notwithstanding the fact that [Mr.] Wolf had expressed concerns three years--earlier in July, 1994--about Frances Klavir's legal competency to execute a Joint Power of Attorney, in favor of both Ruth Gladstein and Sarann Golfield[]." *Id.* at 7 ¶ 16.

Throughout the relevant time period, Ms. Klavir allegedly "suffered from a form of dementia which had been and was gradually worsening over time." *Id.* at 7 ¶ 17. As of June 1996, her "condition was such that she needed to move in to [sic] an assisted living facility in Bridgeport, Connecticut, as determined by one or more of the [] Defendants." *Id.* at 7–8 ¶ 18. As of May 1997, the Goldfields allegedly "were writing checks for Frances Klavir as her mental condition--and her ability to sign her own name--continued to deteriorate." *Id.* at 8 ¶ 19.

The Goldfields, allegedly with the "direct assistance" of the Wolf Defendants, "wrongfully exercised control over the assets of Frances Klavir, taking those assets for their own use and benefit, thereby preventing Plaintiff from receiving the same, and contravening the intent of Frances Klavir with regard to the bequest and distribution of her assets, equally, to her two daughters." *Id.* at 8 ¶ 22.

Mr. Wolf allegedly "took specific direction" from the Goldfields "regarding the wrongful misappropriation of Frances Klavir's assets, and the transfer of said assets to the [] Goldfield[s], all to Plaintiff's harm and detriment." *Id.* at 8–9 ¶ 23. In addition, Mr. Wolf allegedly "deliberately ignored written instructions from Frances Klavir, directing [him] to keep [Ms. Gladstein] informed of his and his firm's handling of [her] estate and trust assets." *Id.* at 9 ¶ 24.

Defendants allegedly "took steps to conceal their actions from the Plaintiff, and have continued to conceal said actions throughout the commencement of this lawsuit." *Id.* at 9 ¶ 25. Ms. Gladstein "claims money damages, including interest and lost income for the wrongful withholding of all monies justly due to her." *Id.* at 9 ¶ 26. Ms. Gladstein alleges that "[a]t all

times relevant hereto, the [Wolf Defendants] had a fiduciary duty to Frances Klavir and to the Plaintiff beneficiary, Ruth Gladstein." *Id.* at 10 ¶ 27. This fiduciary duty to Ms. Gladstein allegedly arises from the Wolf Defendants' provision of legal services in the drafting, preparation, and execution of the Klavir Will, Living Trust, and Second Amendment, and their role as co-trustee of the Living Trust. *Id.* at 10–11 ¶ 28.

Ms. Gladstein asserts the following causes of action: (1) intentional interference with inheritance against Defendants, *id.* at 4–9; (2) breach of fiduciary duties against the Wolf Defendants, who were "responsible for the creation and/or preparation of numerous legal documents on behalf of the (now) deceased Frances Klavir and her husband, as well as on behalf of her daughters," Ms. Goldfield and Ms. Gladstein, *id.* at 9; *see also id.* at 9–15 (offering more details and specific examples of how the Wolf Defendants allegedly breached their fiduciary duties to Ms. Gladstein and Ms. Klavir); (3) negligence against the Goldfields, *id.* at 15–18; (4) breach of fiduciary duties to Ms. Klavir, her assets, her estate, and Ms. Gladstein as beneficiary against the Goldfields, because Ms. Goldfield "deliberately sought out, assumed, and exercised the responsibilities of service as Conservatrix," *id.* at 18–19; (5) negligence against the Wolf Defendants for their failure to oversee and protect the interests and assets of Ms. Klavir, *id.* at 19–21; (6) undue influence and coercion against Defendants, *id.* at 21–23; (7) fraudulent concealment against Defendants, *id.* at 23–24; (8) civil conspiracy against Defendants, *id.* at 24–26; (9) reckless indifference and willful and wanton misconduct against Defendants, *id.* at 26–27; (10) larceny under Conn. Gen. Stat. §§ 53a-119 and 52-564 against Defendants, *id.* at 27; (11) intentional infliction of emotional distress against Defendants, *id.* at 28–29; and (12) negligent infliction of emotional distress against Defendants, *id.* at 29–30.

## B. Procedural History

The Court assumes familiarity with the underlying background of this case and only will discuss events relevant to the pending motion to dismiss.

On July 30, 2007, after multiple hearings held at the Court of Probate in the District of Bridgeport, Judge Paul J. Ganim issued a decree finding that Ms. Klavir's "Last Will and Testament dated June 4, 1997 was duly executed; the testator had sufficient testamentary capacity, and no evidence of undue influence was presented." Ex. C: Estate of Frances Klavir, Probate Decree at 2, ECF No. 77-1 at 62–65 (Ct. of Probate, D. of Bridgeport, July 30, 2007) ("Probate Decree"). Judge Ganim also found the following:

> At [a] hearing [on December 4, 2006], Attorney Cooney on behalf of Ruth Gladstein requested the original Frances Klavir Living Trust dated October 2, 1992 and the Frances Klavir Living Trust Second Amendment dated June 4, 1997 be filed with the Court for examination by an expert witness. All parties agreed that said documents would be field [sic] by Attorney Martin Wolf as trustee and said documents shall be filed under seal. Said trust was inspected by the opponent's expert at the Court. . . . On June 4, 2007, a will contest was scheduled in the above matter . . . Attorney Cooney, on behalf of Ruth Gladstein presented no evidence in support of her objection to the admission of the will.

*Id.* at 2. Judge Ganim further found that the Klavir Will was "duly proved as the decedent's will, and the same is approved and admitted to probate as the LAST WILL AND TESTAMENT of the decedent," and appointed Ms. Goldfied as the executrix of her mother's estate. *Id.* at 3.

On May 6, 2018, Ms. Gladstein filed this Complaint in the Superior Court Connecticut, Judicial District of Fairfield, at Bridgeport, under the Accidental Failure of Suit Statute, Conn. Gen. Stat. § 52-592.[4] Compl. at 1, ECF No. 1 at 7.

---

[4] The Court omits the majority of the prior protracted history of this case in state court, but notes that the original civil lawsuit was filed on September 10, 2009, when Ms. Gladstein also had a pending bankruptcy case in Nevada. Compl. at 1 ¶ 1–4 ¶ 18. Ms. Gladstein's Bankruptcy Trustee allegedly abandoned the claim to Ms. Gladstein in 2014, so that Ms. Gladstein could properly pursue claims against the Defendants, "with the condition that the Estate

On June 4, 2018, the Wolf Defendants removed the action from the Superior Court to this Court. Notice of Removal, ECF No. 1 at 1.

On July 9, 2018, Nancy Tauber filed an appearance as an interested party with power of attorney over her father, Alvin Goldfield. Appearance Self Represented Party, ECF No. 13 (July 9, 2018).

On October 24, 2018, the Court referred the case to Magistrate Judge William I. Garfinkel for a settlement conference. Order Referring Case, ECF No. 37 (Oct. 24, 2018).

On January 25, 2019, following a telephonic pre-settlement conference on November 30, 2018, Minute Entry, ECF No. 41 (Nov. 30, 2018); Judge Garfinkel appointed *pro bono* counsel for the Goldfields for settlement purposes only. Order Appointing Counsel, ECF No. 42 (Jan. 25, 2019).

On November 21, 2019, during a telephonic status conference, the Court granted Ms. Gladstein's motion for a discovery conference related to the deposition of Mr. Wolf, and set a briefing schedule for the parties. Minute Entry, ECF No. 61 (Nov. 21, 2019).

On the same day, the Court also adopted a scheduling order, setting, *inter alia*, a discovery deadline of January 8, 2021, and a dispositive motion deadline of March 5, 2021. Scheduling Order, ECF No. 63 (Nov. 21, 2019).

On December 17, 2019, after reviewing the parties' submissions, the Court cancelled the discovery conference scheduled that day and granted Ms. Gladstein's motion to depose Mr. Wolf while denying his motion for a protective order. Order, ECF No. 71 (Dec. 17, 2019). The Court stated that "Mr. Wolf may be deposed on any subject area not previously covered in any

---

of Ruth Gladstein would retain the right to payment from the net proceeds of any recovery from that lawsuit, under the applicable Bankruptcy Code." *Id.* at 2 ¶ 11–3 ¶ 14. Ms. Gladstein's claims allegedly have not been heard on their merits to this date. *Id.* at 4 ¶ 18; *see also Gladstein v. Goldfield*, 325 Conn. 418 (2017) (holding that Ms. Gladstein's appeal was moot, because it related solely to the motion to substitute the bankruptcy trustee as plaintiff).

previous testimony given by Mr. Wolf relating to the underlying subject matter in this case, regardless of whether it was in this case." *Id.* Given Mr. Wolf's "advanced age" and alleged medical condition, the Court placed certain limits on the deposition and required it be completed by January 31, 2020. *Id.*

On February 28, 2020, the Wolf Defendants filed their motion to dismiss. Mot. to Dismiss, ECF No. 77 (Feb. 28, 2020) ("Defs.' Mot."); Mem. of Law in Supp. of Defs.' Mot., ECF No. 77-1 (Feb. 28, 2020) ("Defs.' Mem.").

On May 4, 2020, Ms. Gladstein timely objected to and opposed the motion to dismiss. Pl.'s Obj. to Defs.' Mot., ECF No. 84 (May 4, 2020); Pl.'s Mem. of Law in Opp'n to Defs.' Mot., ECF No. 85 (May 4, 2020) ("Pl.'s Opp'n").

On May 15, 2020, the Wolf Defendants timely replied. Reply Mem. in Supp. of Defs.' Mot., ECF No. 88 (May 15, 2020) ("Defs.' Reply").

On the same day, Ms. Gladstein moved for partial summary judgment. Mot. for Summ. J., ECF No. 89 (May 15, 2020).

On May 27, 2020, the Wolf Defendants moved to deny or defer their response to the partial motion for summary judgment. Mot. to Deny or Defer REsp., ECF No. 90 (May 27, 2020).

On May 28, 2020, the Court granted the Wolf Defendants' motion to defer their response to Ms. Gladstein's motion for summary judgment to "the later of September 4, 2020, or thirty days after the Court's ruling on their" motion to dismiss. Order, ECF No. 91 (May 28, 2020).

On June 3, 2020, Ms. Gladstein moved to set aside the Court's order. Mot. to Set Aside, ECF No. 92 (June 3, 2020).

On June 4, 2020, the Wolf Defendants opposed the motion to set aside the Court's order deferring their response to Ms. Gladstein's motion for summary judgment. Defs.' Mem. In Opp'n to Pl.'s Mot. to Set Aside, ECF No. 93 (June 4, 2020); Corrected Introduction, ECF No. 94 (June 5, 2020).

On June 12, 2020, Ms. Gladstein moved to preclude the Wolf Defendants from offering into evidence at any point "any of the undisclosed documents contained in the 9 bankers boxes of documents" allegedly in the possession of Ms. Goldfield, and first disclosed by the Wolf Defendants in their opposition to her motion to set aside the Court's order. Mot. to Preclude Defs.' Use of Undisclosed Documents, ECF No. 95 at 1 (June 12, 2020) ("Pl.'s Mot. Preclude").

On June 29, 2020, Ms. Gladstein filed a motion to compel certain boxes of documents allegedly in the possession of Ms. Goldfield, who has remained *pro se*. Pl.'s Mot. for Order Compelling Production, ECF No. 96 (June 29, 2020).

On June 30, 2020, the Court denied the motion to compel without prejudice to renewal following a discovery conference with the Court. Order, ECF No. 98 (June 30, 2020).

On July 7, 2020, the Wolf Defendants opposed Ms. Gladstein's motion to preclude the undisclosed documents in Ms. Goldfield's possession. Defs.' Mem. in Opp'n to Pl.'s Mot. Preclude, ECF No. 106 (July 7, 2020).

On July 10, 2020, the Wolf Defendants filed a status report of outstanding discovery disputes. Defs.' Issues for July 17, 2020 Discovery Conf., ECF No. 107 (July 10, 2020).

On July 13, 2020, the Court also denied the motion to preclude without prejudice to renewal following the discovery conference, and directed Ms. Gladstein to file a status report of outstanding discovery disputes by July 15, 2020. Order, ECF No. 108 (July 13, 2020).

On July 15, 2020, Ms. Gladstein filed a status report of outstanding discovery disputes. Pl.'s Status Report of Outstanding Discovery Disputes, ECF No. 110 (July 15, 2020).

On July 27, 2020, the Court held by videoconference a virtual discovery conference and motion hearing on the motion to dismiss. Minute Entry, ECF No. 114 (July 27, 2020).

## II.      STANDARD OF REVIEW

### A.  Rule 12(b)(1)

"A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000); Fed. R. Civ. P. 12(b)(1). The plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject matter jurisdiction over the claims. *Id.*

"When considering a motion to dismiss pursuant to Rule 12(b)(1), the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000); *see also Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) (quoting *Sweet*, 235 F.3d at 83). The court, however, may also resolve disputed jurisdictional issues "by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009) (citing *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000)).

Because federal courts are courts of limited jurisdiction, "[c]ustomarily, a federal court first resolves any doubts about its jurisdiction over the subject matter of a case before reaching the merits or otherwise disposing of the case." *Cantor Fitzgerald, L.P, v. Peaslee,* 88 F.3d 152, 155 (2d Cir. 1996); *see also Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n,* 896 F.2d 674, 678 (2d

Cir. 1990) ("the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.") (citing 5 Wright & Miller, Fed. Prac. & Proc. § 1350, 548 (1969)).

### B. Rule 12(b)(6)

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the

plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York v. Ass'n of the Bar of the City of New York*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true."), *cert. denied*, 537 U.S. 1089 (2002).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

With *pro se* litigants, this Court must liberally construe their filings to raise the "strongest arguments it suggests." *See Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir. 2006); *see also Sykes v. Bank of Am.,* 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman,* 470 F.3d at 474).

## III.    DISCUSSION

The Wolf Defendants argue for dismissal based on (1) a lack of subject matter jurisdiction because Ms. Gladstein lacks standing to bring her claims, as "any breaches of duty as alleged were of duties owed to Frances Klavir, not [P]laintiff," who as "a contingent residuary beneficiary was not the client and was not the beneficiary of the trust until Frances's death;" and (2) separately, "failure to state a claim upon which relief may be granted" for Counts Seven, Eleven, and Twelve. Defs.' Mem. at 1.

### A.  Rule 12(b)(1) Motion to Dismiss

Article II, Section 2 of the U.S. Constitution limits federal court jurisdiction to "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1550 (2016) (quoting *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 774 (1998)). Because "standing is necessary to our jurisdiction," a federal court is required to determine standing at the outset. *Strubel v. Comenity Bank*, 842 F.3d 181, 187 (2d Cir. 2016). A party has standing when it is the proper party to bring each claim it seeks to press. *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012). A plaintiff is the proper party when she satisfies the "irreducible constitutional minimum" of standing in federal court: (1) "injury in fact;" (2) that is "fairly traceable" to a defendant's challenged conduct; and (3) that is "likely to be redressed" by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61, 589–90 (1992). To support standing, an injury must be both "concrete and particularized." *Mejia v. Time Warner Cable Inc*., No. 15-CV-6445 (JPO), 2017 WL 3278926, at *7 (S.D.N.Y. Aug. 1, 2017) (quoting *Spokeo, Inc.*, 136 S. Ct. at 1548).

The Wolf Defendants argue that "Plaintiff's harm, if any, was derivative from the Estate or Trust." Defs.' Mem. at 10. In their view, "each of the alleged torts harmed Frances Klavir, her Estate or the Trust directly," *id.*, while Ms. Gladstein's claims are "in actuality assertions of legal malpractice," *id.* at 9, which she does not have standing to bring as a non-client, *id.* at 10–19. The Wolf Defendants emphasize that "[b]oth federal and Connecticut law are clear that the nature of a cause of action alleged in a complaint is based on the allegations and not labels put on them by the plaintiff." *Id.* at 14. They contend that, "be it drafting, execution, or management of assets, the duty owed was to Frances Klavir and nobody else," and if that duty was breached,

"the right to bring suit for redress lay with Frances Klavir or, after her death, her executrix, not plaintiff." *Id.* at 19.

According to the Wolf Defendants, Frances Klavir was both the settlor and beneficiary of the Living Trust, and dominant co-trustee with Mr. Wolf, while Ms. Gladstein "was a residual, contingent beneficiary who would benefit only if the Trust was not modified or revoked during Frances' lifetime and if assets remained upon her death." *Id.* at 19–20. They assert that Ms. Gladstein neither sought an accounting nor did she bring an action on behalf of the Living Trust. *Id.* at 23. Because the Wolf Defendants only owed a duty to Ms. Klavir and the Living Trust, they claim that Ms. Gladstein lacks standing to sue for any failure to perform legal obligations, as she is not the estate or Trust representative. *Id.* at 23–24.

In response, Ms. Gladstein emphasizes that she satisfies the injury requirement for standing because she has alleged the loss of her proper inheritance. Pl.'s Opp'n at 14–15.  In her view, she "has sufficiently plead that she suffered an actual injury or invasion of a legally protected interest that was causally connected to the challenged action of [the Wolf Defendants]." *Id.* at 16. She asserts that the "cause of action of tortious interference with inheritance" is recognized and available in Connecticut, and that the Complaint contains sufficient allegations to establish standing. *Id.* at 18.

In reply, the Wolf Defendants emphasize that the "alleged tortious conduct did not arise from [their] historic representation of [Ms. Gladstein] [and] they are not the services at-issue in this action." Defs.' Reply at 3. In their view, "most of [P]laintiff's allegations are not facts; they are conclusory, and legal conclusions couched as factual allegations" that support dismissal. *Id.* Furthermore, the Wolf Defendants argue that the trust documents, attached to their motion to dismiss "are directly material to standing." *Id.* They contend that the Trust Agreement "shows

that the primary intent of the Trust was to provide income for and full control of use of assets by Franc[e]s Klavir for her life, and that [P]laintiff's interest was fully contingent on what might be left after Frances used the income and directed use of the corpus." *Id.* at 4 (citing Trust Agreement).

In the Wolf Defendants' view, the Second Amendment "shows that it was the intent of the settlor/trustee to change the proportions of the residual beneficiaries." *Id.* (citing Second Amendment). According to the Wolf Defendants, "[b]oth show that plaintiff was not a primary beneficiary." *Id.* (emphasis omitted). Furthermore, after Ms. Gladstein had the opportunity to oppose the Klavir Will, Judge Paul J. Ganim of the Court of Probate in the District of Bridgeport found that the Klavir Will, which was "executed the same day as the Second Amendment, 'was duly executed and the testator had sufficient testamentary capacity; and no evidence of undue influence was presented." *Id.* (citing Ex. C: Probate Decree, ECF No. 77-1 at 62–65 (July 30, 2007) ("Probate Decree").

The Wolf Defendants reiterate they cannot be liable to non-client Ms. Gladstein for alleged "negligent rendering of their services," because she is acting for herself, not her mother's estate. *Id.* at 6 (internal quotation marks and citation omitted). They argue that Ms. Klavir engaged them "to further her interests, not [P]laintiff's, and here too, imposing a concomitant duty to protect [P]laintiff would interfere with [their] duty of undivided loyalty to their client." *Id.* at 7–8. The Wolf Defendants submit the following:

> An attorney representing a client in drafting an estate plan and in distributing funds where there are competing interests among the client's children must be free to advise the client, to prepare estate planning documents and to administer without fear that once the client passes he will be exposed to suit by a child who feels that their mother could not possibly have intended to give her a lesser share, and that she must have been incompetent or unduly influenced.

*Id.* at 8–9.

The Court agrees.

"Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010) (citing *Horne v. Flores*, 557 U.S. 443, 445 (2009)). To meet the standing requirements, the party invoking federal jurisdiction "bears the burden of establishing these elements." *Spokeo, Inc.*, 136 S. Ct. at 1547. The injury-in-fact element requires that the plaintiff be "the proper party to bring this suit." *Raines v. Byrd*, 521 U.S. 811, 818 (1997). "To establish injury in fact, a plaintiff must show that he or she suffered 'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc.,* 136 S. Ct. at 1548 (citing *Lujan*, 504 U.S. at 560). For an injury to be "particularized," the injury "must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

First, "[a]s a general rule, attorneys are not liable to persons other than their clients for the negligent rendering of services." *Krawczyk v. Stingle,* 208 Conn. 239, 244 (1988). To determine when attorneys should be held liable to parties with whom they are not in privity, "courts have looked principally to whether the primary or direct purpose of the transaction was to benefit the third party." *Id.* at 245. Courts must "look beyond the language used in the complaint to determine the true basis of the claim." *Meyers v. Livingston, Adler, Pulda, Meiklejohn & Kelly, P.C.*, 134 Conn. App. 785, 790 (2012). Here, the underlying claims are based on the legal services provided by the Wolf Defendants to Ms. Klavir related to her estate planning. In sum, Ms. Gladstein's thirty-three page Complaint and Twelve Counts allege that the Wolf Defendants committed legal malpractice by executing and allowing the Second

16

Amendment and the Klavir Will to be signed by Ms. Klavir when she was not of sound mind, and that the Wolf Defendants did so in concert with the Goldfields, in order to deprive Ms. Gladstein of her inheritance, and in order for Ms. Goldfield to benefit instead.

Because Ms. Gladstein's claims are based on the legal services rendered by the Wolf Defendants, those claims must fail. She was not their client. Although the Complaint alleges that the Wolf Defendants may have provided legal services to Ms. Gladstein at one point, *see* Compl. at 13 (alleging that the Wolf Defendants "had represented Plaintiff and her husband with regard to various legal and financial matters in the past"), her claims are based on the Wolf Defendants' conduct with respect to the administration of the Klavir Will and Living Trust, *see id.* at 9–15 (detailing how the Wolf Defendants allegedly mismanaged the Living Trust). Because the Complaint only alleges claims related to the Living Trust and the Klavir Will, the Wolf Defendants never owed any duties to Ms. Gladstein, who was not their client, as an attorney or fiduciary. *See Somma v. Gracey*, 15 Conn. App. 371, 379 (1988) ("The obligation of the attorney is to provide the service for which he was hired.").

"Fear of liability to potential third party beneficiaries would contravene the attorney's primary responsibility to ensure that the proposed estate plan effectuates the client's wishes and that the client understands the available options and the legal and practical implications of whatever course of action is ultimately chosen." *Zamstein v. Marvasti*, 240 Conn. 549, 563 (1997) (internal citation and quotation marks omitted). Consequently, Ms. Gladstein cannot bring allegations sounding in breach of fiduciary duty or negligence against the Wolf Defendants in their individual capacities.

"The trustee is the proper party to bring an action against anyone who wrongfully interferes with the interests of the trust." *Naier v. Beckenstein*, 131 Conn. App. 638, 646 (2011)

17

(citations omitted). "The interest of the beneficiary of a trust is an equitable interest, and ordinarily is protected by suits in equity rather than by actions at law . . . If a third person commits a tort with respect to the trust property, the beneficiary, if he is not in possession, cannot maintain an action at law against him." *Id.* at 647 (quoting Restatement (Second), Trusts § 281, comment on subsection (1)). Although a beneficiary may sue the trustee on behalf of the trust, *see, e.g.*, *Naier*, 131 Conn. App. at 647 ("If the trustee violated its fiduciary duty, the beneficiaries had standing to bring an action against it."); Ms. Gladstein's claims are not against Mr. Wolf as trustee of the Living Trust, but are against him individually, and based on alleged personal injuries, which Connecticut courts disallow, *see Blonstein v. Blonstein*, 2011 WL 3891010, at *2–*5 (Conn. Super. Ct. July 26, 2011) (finding the "legal malpractice theory evident" because all allegations were jointly directed against the attorney and law firm, and finding that plaintiffs—the trust's settlor and beneficiaries—did not have standing to sue the attorneys who were allegedly negligent in their role as counsel for the trust).

Here, "[i]f any entity was defrauded, it was the trust itself," *Naier*, 131 Conn. App. at 648, and "trust beneficiaries have no standing to sue third parties to enforce the rights of the trust," *Blonstein*, 2011 WL 3891010, at *3 (citations omitted). Ms. Gladstein has not alleged that the Wolf Defendants owed any fiduciary duty to her apart from their role as attorneys for Ms. Klavir, nor has she sued Mr. Wolf as trustee of the Living Trust on behalf of the Living Trust. Furthermore, any injuries to Ms. Klavir's estate may only be brought by the estate's representative, and Ms. Gladstein is not the executrix. *See Cadle Co. v. D'Addario,* 268 Conn. 441, 461 (2004) (holding that estate "executor's primary duty is to the estate itself, and to fulfilling the intentions of the decedent with respect to the estate").

Regardless of how a plaintiff labels her claims, courts "must examine the substance of the relief that [plaintiff] [] seek[s]." *Mercer v. Bank of N.Y. Mellon, N.A.*, 609 F. App'x 677, 679 (2d Cir. 2015). In this case, Ms. Gladstein's ten counts against the Wolf Defendants all arise out of the same set of conduct and focus on actions the Wolf Defendants allegedly should have taken in their role as lawyers for Ms. Klavir.

Ultimately, Ms. Gladstein is dissatisfied with her inheritance; and having failed to undermine the legal instruments that, in her view, unfairly limited her inheritance, she now seeks to attack collaterally these very same documents by suing the Wolf Defendants. But Ms. Gladstein lacks standing to bring claims based on the Wolf Defendants' conduct and provision of legal services related to Ms. Klavir's estate planning; she also lacks standing to bring claims based on their conduct as trustee for the Klavir Trust. As previously discussed, any standing to assert those claims reside in the trustee or the representative of Ms. Klavir's estate, Ms. Goldfield.

As a result, after reviewing the allegations in the Complaint, the following counts will be dismissed for lack of standing against the Wolf Defendants: intentional interference with inheritance (Count One); breach of fiduciary duties (Count Two); negligence or failure to oversee (Count Five); undue influence or coercion (Count Six); fraudulent concealment (Count Seven); civil conspiracy (Count Eight); reckless indifference or willful and wanton misconduct (Count Nine); larceny (Count Ten); intentional infliction of emotional distress (Count Eleven); and negligent infliction of intentional distress (Count Twelve).[5]

---

[5] The Court notes that for many of these counts, Ms. Gladstein merely incorporated the previous allegations—based on the Wolf Defendants' provision of legal services for Ms. Klavir or their role as trustee for the Living Trust—with conclusions that they amounted to the alleged legal violation. *See Iqbal*, 556 U.S. at 678 ("conclusory statements" are insufficient).

### 1.   Count One: Intentional Interference with Inheritance

The allegations for Count One are all based on the Wolf Defendants' provision of legal services to Ms. Klavir while she was alive. *See, e.g.*, Compl. at 8 ¶ 22, 9 ¶¶ 24–25 (alleging that the Wolf Defendants aided the Goldfields to "wrongfully exercise[] control over the assets of Frances Klavir," and that they "deliberately ignored written instructions from Frances Klavir . . . to keep the Plaintiff . . . informed," thus "conceal[ing] their actions from the Plaintiff"). As previously discussed, the Wolf Defendants owed no duty to Ms. Gladstein, as she was not their client. Although she seeks to label this claim as "intentional interference with inheritance," the Court must "look beyond the language used in the complaint to determine the true basis of the claim." *See Meyers*, 134 Conn. App. at 790.

Accordingly, because Ms. Gladstein lacks standing to sue her mother's attorneys for legal services they provided to her mother, this claim will be dismissed.

### 2.   Count Two: Breach of Fiduciary Duties

As with all the following counts, Count Two incorporates the prior allegations. In addition, Ms. Gladstein alleges, *inter alia*, that the Wolf Defendants breached their fiduciary duties in their "creation and/or preparation of enormous legal documents on behalf of" Ms. Klavir. Compl. at 9 ¶ 26. The allegations are based on the Wolf Defendants' conduct performed in their capacity as either attorney for Ms. Klavir or trustee of the Living Trust. *See id.* at 11 ¶ 29 ("The [Wolf Defendants] failed to act in accordance with the standard duty of care required of attorneys and trustees in the exercise of their duties described herein . . . ."). If any fiduciary duty was owed, as already explained, it was not to Ms. Gladstein.

Accordingly, this claim also will be dismissed for lack of standing.

### 3. Count Five: Negligence/Failure to Oversee

Count Five recasts the Wolf Defendants' conduct as negligence for failing to oversee the Goldfields' Conduct. *See* Compl. at 20 ¶ 37 ("[The Wolf Defendants] had a continuous and ongoing duty to oversee and to protect the interest and the assets of Frances Klavir, including her trust and estate assets."). Again, if any duty was owed, it was not to Ms. Gladstein, who was neither the client nor representative of Ms. Klavir's estate.

Accordingly, this claim will be dismissed for lack of standing.

### 4. Count Six: Undue Influence/Coercion

Count Six recasts the same conduct as undue influence or coercion. *See, e.g.*, Compl. at 22 ¶ 57 ("[Defendants] created documents which substantially changed the percentage of inheritance between the Plaintiff and [Ms. Goldfield], in direct contradiction of the expressed wishes of Frances Klavir."); *id.* at 23 ¶ 60 ("As a result of the Defendants' misconduct, the trust and estate assets of Frances Klavir have been depleted . . . ."). Any actionable harm would incur to Ms. Klavir's estate, and Ms. Gladstein does not sue on behalf of the estate, nor is she a representative able to do so.

Accordingly, this claim will also be dismissed for lack of standing.

### 5. Count Seven: Fraudulent Concealment

Count Seven[6] is another restyling of the same conduct, for which Ms. Gladstein lacks standing, as already discussed.

---

[6] Significantly, this alleged cause of action is merely a tolling provision. Conn. Gen. Stat. § 52-595 states:

> If any person, liable to an action by another, fraudulently conceals from him the existence of the cause of such action, such cause of action shall be deemed to accrue against such person so liable therefor at the time when the person entitled to sue thereon first discovers its existence.

Conn. Gen. Stat. § 52-595.

Accordingly, this claim will be dismissed.

### 6.   Count Eight: Civil Conspiracy

Count Eight recasts the same conduct as a civil conspiracy. *See, e.g.*, Compl. at 25 ¶ 61 ("The Defendants have conspired and acted in a deliberate and fraudulent manner, to facilitate and/or participate in the misconduct described herein above."). Ms. Gladstein does not have standing to sue based on the Wolf Defendant's legal or trustee services.

Accordingly, this claim will be dismissed.

### 7.   Count Nine: Reckless Indifference/Willful & Wanton Misconduct

Count Nine again relies on the previous factual allegations, but characterizes the conduct as "committed with a reckless indifference" and "constitut[ing] a willful and wanton violation of Plaintiff's rights." Compl. at 27 ¶¶ 67–68. This claim fails for the same reason that the other claims fail: Ms. Gladstein's lack of standing.

Accordingly, this claim also will be dismissed for lack of standing.

### 8.   Count Ten: Larceny

Count Ten also incorporates the prior allegations, and alleges that the "Defendants' conduct, described above, constitutes theft or larceny . . . insofar as the Defendants have obtained the assets and property of Frances Klavir, her estate, and the Plaintiff beneficiary by embezzlement, false pretenses or other wrongful means." Compl. at 27 ¶ 66.

"A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner." Conn. Gen. Stat. § 53a-119. Ms. Gladstein cannot base a larceny claim on the same allegations of conduct—conduct that essentially amounts to legal malpractice—for

which she does not have standing to bring. Furthermore, if there was theft, the injured party would be Ms. Klavir or her estate, and not Ms. Gladstein.

Accordingly, this claim will be dismissed for lack of standing.

### 9. Counts Eleven and Twelve: Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress

Counts Eleven and Twelve label the previously alleged misconduct as intentional and negligent infliction of emotional distress, respectively, by incorporating the prior allegations. As previously discussed, Ms. Gladstein lacks standing to sue based on the Wolf Defendants' conduct as attorneys for Ms. Klavir or trustee for the Living Trust.

Accordingly, these claims also will be dismissed for lack of standing.

### B. Rule 12(b)(6) Motion to Dismiss

Because the Court will dismiss Ms. Gladstein's claims for lack of standing, the Court will not separately address whether Counts Seven, Eleven, and Twelve fail to state a plausible claim upon which relief may be granted.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. All claims against Mr. Wolf and Cohen & Wolf, P.C., are terminated.

The Clerk of Court is directed to terminate them as defendants, and enter judgment for them.

**SO ORDERED** at Bridgeport, Connecticut, this 31st day of July, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE