# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

RUTH GLADSTEIN,
  *Plaintiff,*

  v.                                        No. 3:18-cv-00926 (VAB)

SARANN GOLDFIELD, *et al.,*
  *Defendants.*

## ORDER DISMISSING CASE

Ruth Gladstein has sued Sarann Goldfield, Alvin Goldfield[1] (the "Goldfields" or "Goldfield Defendants"), Martin Wolf, Esq., and Cohen and Wolf, P.C. (with Mr. Wolf, the "Wolf Defendants") (collectively, "Defendants"). She alleges intentional interference with inheritance, undue influence or coercion, fraudulent concealment, civil conspiracy, reckless indifference, larceny, intentional infliction of emotional distress, and negligent infliction of emotional distress against Defendants; negligence and breach of fiduciary duties against the Wolf Defendants; and negligence and breach of fiduciary duties against the Goldfields. Notice of Removal, ECF No. 1 (June 4, 2018) ("Compl.").

The Court dismissed Ms. Gladstein's claims against the Wolf Defendants, Order, ECF No. 115 (July 31, 2020) ("Wolf Dismissal Order"), and denied her motion for reconsideration of this dismissal, Order, ECF No. 123 (Aug. 28, 2020) ("Reconsideration Order"). In the interim, the Court issued an order requiring Ms. Gladstein to show cause as to why her remaining claims against the Goldfield should not be dismissed based on the doctrines of res judicata or collateral estoppel. Order to Show Cause, ECF No. 117 (July 31, 2020) ("Show Cause Order").

---

[1] On July 1, 2020, the Estate of Alvin Goldfield was substituted as a party for Mr. Goldfield. Order Granting Second Mot. to Substitute Party, ECF No. 100 (July 1, 2020).

1

For the following reasons, the Court **DISMISSES** Ms. Gladstein's claims against the Goldfields.

## I.   BACKGROUND

Familiarity with the factual and procedural background in this case is assumed. *See* Wolf Dismissal Order.

On July 31, 2020, the Court ordered Ms. Gladstein to show cause as to why claims against the Goldfields should not be dismissed based on either the doctrines of res judicata or collateral estoppel. Show Cause Order.

That same day, the Court granted the Wolf Defendants' motion to dismiss, *see* Dismissal Order, and denied as moot Ms. Gladstein's motion for summary judgment and motion to set aside, Order, ECF No. 116 (July 31, 2020); *see also* Pl.'s Mot. for Partial Summ. J., ECF No. 89 (May 15, 2020); Mot. to Set Aside Order Granting Mot. to Deny or Defer Resp. to Pl.'s Mot. for Summ. J., ECF No. 92 (June 3, 2020).

On August 10, 2020, Ms. Gladstein moved for reconsideration with supporting materials. Pl.'s Mot.; Mem. of L. in Supp. of Pl.'s Mot. for Recons. of Ruling and Order Dismissing Case, ECF No. 119-1 (Aug. 10, 2020) ("Pl.'s Mem.").

On August 11, 2020, the Wolf Defendants opposed Ms. Gladstein's motion. Mem. Opposing Pl.'s Mot. for Recons. of Defs. Martin Wolf and Cohen and Wolf P.C., ECF No. 120 (Aug. 11, 2020) ("Wolf Opp'n").

On the same day, Ms. Gladstein responded to the Wolf Defendants' opposition. Pl.'s Resp. to Allegation that Her Motion for Recons. was Untimely, ECF No. 121 (Aug. 11, 2020).

On August 27, 2020, Ms. Gladstein responded to the Court's Show Cause Order. Pl.'s Resp. to Order to Show Cause, ECF No. 122 (Aug. 27, 2020) ("Pl.'s Resp.").

On September 16, 2020, the Goldfields replied to Ms. Gladstein's response. Reply, ECF No. 124 (Sept. 16, 2020) ("Defs.' Reply").

On March 19, 2021, the Court denied Ms. Gladstein's motion for reconsideration. Reconsideration Order.

## II.   STANDARD OF REVIEW

The doctrine of collateral estoppel, or issue preclusion, "provides that 'once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case.'" *Faraday v. Blanchette*, 596 F. Supp. 2d 508, 514 (D. Conn. 2009) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994)).

In cases involving prior litigation between or among the parties, a court must determine if it is precluded from adjudicating some or all of the claims because of previous rulings on the merits of those claims. The doctrine of *res judicata*, or claim preclusion, generally dictates that "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.5 (1979). The related doctrine of "[c]ollateral estoppel bars a party from raising an issue of law or fact in a second suit that the party had a 'full and fair opportunity to litigate . . . in [a] prior proceeding and where the decision of the issue was necessary to support a valid and final judgment on the merits in the first action." *Irish Lesbian & Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir. 1998) (internal citations and quotations omitted) (second and third alterations in original). An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined," and is "necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered." *Lighthouse Landings, Inc. v. Conn. Light and*

*Power Co.*, 300 Conn. 325, 343 (Conn. 2011). "The doctrines of res judicata and collateral estoppel protect 'litigants from the burden of relitigating an identical issue with the same party or his privy and [to promote] judicial economy by preventing needless litigation.'" *Giuliani,* 143 F.3d at 644, (quoting *Parklane Hosiery Co.*, 439 U.S. at 326).

> In order for collateral estoppel to bar the relitigation of an issue in a later proceeding, the issue concerning which relitigation is sought to be estopped must be identical to the issue decided in the prior proceeding. The court must determine what facts were necessarily determined in the first trial, and must then assess whether the party is attempting to relitigate those facts in the second proceeding.

*Ventres v. Goodspeed Airport, LLC*, 301 Conn. 194, 206 (2011) (internal citations and alterations omitted).

"[U]nder federal law, a court may raise the issue of collateral estoppel *sua sponte*." *Stinnett v. Delta Air Lines, Inc.*, 803 F. App'x 505, 508 (2d Cir. 2020) (summary order); *see, e.g.*, *Curry v. City of Syracuse,* 316 F.3d 324, 331 (2d Cir. 2003) (noting that the Second Circuit has "previously upheld a district court's dismissal of a case on collateral estoppel grounds" where it was raised by the district court *sua sponte); Doe v. Pfrommer,* 148 F.3d 73, 80 (2d Cir. 1998) ("Although the district court raised the issue of collateral estoppel *sua sponte,* this decision does not require reversal.").

## III.  DISCUSSION

As explained in the Show Cause Order, on July 30, 2007, after multiple hearings held at the Court of Probate in the District of Bridgeport, Judge Paul J. Ganim issued a decree finding that Ms. Klavir's "Last Will and Testament dated June 4, 1997 was duly executed; the testator had sufficient testamentary capacity, and no evidence of undue influence was presented." Ex. C to Mem. of L in Supp. of Mot. to Dismiss of Defs. Martin Wolf and Cohen and Wolf, ECF No. 77-1, at 64–66 (Feb. 28, 2020) ("Probate Decree"). Judge Ganim also found the following:

> At [a] hearing [on December 4, 2006], Attorney Cooney on behalf
> of Ruth Gladstein requested the original Frances Klavir Living Trust
> dated October 2, 1992 and the Frances Klavir Living Trust Second
> Amendment dated June 4, 1997 be filed with the Court for
> examination by an expert witness. All parties agreed that said
> documents would be field [sic] by Attorney Martin Wolf as trustee
> and said documents shall be filed under seal. Said trust was
> inspected by the opponent's expert at the Court. . . . On June 4, 2007,
> a will contest was scheduled in the above matter. . . . Attorney
> Cooney, on behalf of Ruth Gladstein presented no evidence in
> support of her objection to the admission of the will.

*Id.* at 2. Judge Ganim further found that the Klavir Will was "duly proved as the decedent's will,

and the same is approved and admitted to probate as the LAST WILL AND TESTAMENT of the

decedent," and appointed Ms. Goldfield as the executrix of her mother's estate. *Id.* at 3

(emphasis in original).

Ms. Gladstein's remaining claims against the Goldfields concern the administration of Ms.

Klavir's estate, the Frances Klavir Living Trust ("Trust"), and Ms. Klavir's Last Will and

Testament. *See* Compl.; *see also* Ex. 9 to Pl.'s Mot. for Partial Summ. J., ECF No. 89-3, at 57-61

(May 15, 2020) ("Will"); Ex. 8 to Pl.'s Mot. for Partial Summ. J., ECF No. 89-3, at 50-55 (May

15, 2020) ("Second Amendment").

In response to the Show Cause Order, Ms. Gladstein first argues that the Goldfields "have

not moved to dismiss any of [her] claims against them" and that "[t]he arguments made by the

[Wolf Defendants] in support of their motion to dismiss do not apply to the claims made against

the . . . Goldfields." Pl.'s Resp. at 2. Ms. Gladstein maintains that the Goldfields "are not lawyers

and not one the claims alleged against them is based on a theory of legal malpractice." *Id.*

Ms. Gladstein further argues that the Court takes judicial notice of the Probate Decree, but

"appears to overlook the findings of fact by the Probate Court on June 17, 2009 ("2009 Probate

Order") and the undisputed facts as found by the Supreme Court of Connecticut." *Id.* at 2-3. Ms.

Gladstein contends that Judge Rearden in the 2009 Probate Order "held that the Probate Court lacked subject matter jurisdiction to make a determination as to the validity of the 1997 amendment to the Trust" and order that if "an action in Superior Court" was filed with "respect to the Objections and Final Accounting of the Trustee," then "the Application . . . for approval of the Final Account of Trustee of the France Klavir Living Trust" would be denied without prejudice. *Id.* Ms. Gladstein "commenced the action to challenge the validity of the amendment to the Trust and . . . the amendment of the Will" and "thus the Application for Approval of Final Account of Trustee of the Frances Klavir Living Trust was denied." *Id.*  Ms. Gladstein contends that "[n]o court has ever determined that the Trust was validly amended" and that "there is more than sufficient evidence to prove that the alleged amendment to the Trust is now valid." *Id.* at 5.

Ms. Gladstein concludes

> It is an undisputed fact that [she] is a beneficiary of the Francis Klavir Trust. It is an undisputed fact that [her] interest in the Frances Klavir Trust was reduced in 1997. [Ms. Gladstein] alleges that the reduction of her interest in the Frances Klavir Trust was the result of improper actions by the Goldfield Defendants. There has not been a final judgement (or any judgment) that determines the relevant facts that are the subject of [her] claims against the Goldfield Defendants . . . None of the Plaintiff's claims against the Goldfield Defendants are barred by the doctrines of *res judicata* or collateral estoppel.

*Id.* at 7-8.

The Goldfields maintain that Ms. Gladstein's "allegations against [them] should be decided [in their favor] given that (1) Frances Klavir was competent on June 4, 1997, and (2) the Goldfields did not exert undue influence on Frances Klavir when she amended both her will and the Trust during a visit on that day to Cohen & Wolf." Defs.' Reply at 1. The Goldfields argue that "[b]oth of those questions were decided by Judge Ganim in the [Probate Decree]." *Id.* (citing Probate Decree ¶ 13 ("[T]he testator has sufficient testamentary capacity; and not evidence of undue

influence was presented.")). The Goldfields contend that "[t]he same facts about the execution of the will on June 4. 1997 during the same visit to Cohen & Wolf [also apply] to the amendment of the [T]rust." *Id.*

The Goldfields further argue that "Judge Rearden's 2009 Order did not discuss the [W]ill" and thus, the Probate Decree "about testamentary capacity and undue influence was not changed by Judge Rearden's 2009 Order." *Id.* at 2. The Goldfields conclude that Francis Klavir's testamentary capacity and lack of evidence of undue influence were decided for the purposes of collateral estoppel in the Probate Decree "when Judge Ganim accepted France Klavir's will." *Id.*

The Court agrees.

"The doctrines of *res judicata* and collateral estoppel apply to probate matters." *In re McNamara*, 281 B.R. 799, 803 (Bankr. D. Conn. 2002); *see also Heussner v. Day, Berry & Howard, LLP*, 94 Conn. App. 569, 576 (2006) ("Probate Court decrees are final judgments for the purpose of the doctrines of res judicata and collateral estoppel.").

"Collateral estoppel . . . forecloses 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" *Schwartz v. HSBC Bank USA, N.A.,* 160 F. Supp. 3d 666, 674 (S.D.N.Y. 2016) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 892 (2008)). Under Connecticut law, "[c]ollateral estoppel means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Cumberland Farms, Inc. v. Town of Groton*, 262 Conn. 45, 58 (2002). "For 'an issue to be subject to collateral estoppel, (1) it must have been fully and fairly litigated in the first action, and (2) it also must have been actually decided[,] and (3) the decision must have been necessary to the judgment.'" *Gross v. Rell*, 485 F. Supp. 2d 72, 78–79 (D. Conn.

2007), *aff'd in part, question certified*, 585 F.3d 72 (2d Cir. 2009), *certified question answered*, 304 Conn. 234 (2012) (quoting *Golino v. New Haven*, 950 F.2d 864, 869 (2d Cir. 1991).

"An issue has been fully and fairly litigated if the party against whom collateral estoppel is asserted had a 'full and fair opportunity' to litigate that issue in the prior proceeding." *Faraday v. Blanchette*, 596 F. Supp. 2d 508, 515 (D. Conn. 2009) (citing *Aetna Cas. & Sur. Co. v. Jones*, 220 Conn. 285, 306 (1991)). In the Probate Decree, Judge Ganim explains the procedure taken by the Probate Court to determine the validity of the Will. Probate Decree at 64-65. A will contest was scheduled for June 4, 2007. *Id.* Ms. Gladstein was given the opportunity to present an argument, but counsel for Ms. Gladstein "presented no evidence in support of her objection to the admission of the will." *Id.*

"'An issue is actually litigated if it is properly raised in the pleadings or otherwise, submitted for determination, and in fact determined.'" *Faraday*, 596 F. Supp. 2d at 515 (quoting *State v. Joyner*, 255 Conn. 477, 490 (2001)); *see also Heussner v. Day, Berry & Howard, LLP*, 94 Conn. App. 569, 573 (2006) (same). The issue of the validity of the Will was submitted to the Probate Court. Probate Decree at 64.[2] Judge Ganim determined that Ms. Klavir's "Last Will and Testament dated June 4, 1997 was duly executed; the testator had sufficient testamentary capacity; and no evidence of undue influence was presented." *Id.* at 65.

"'An issue is necessarily determined if, in the absence of a determination of the issue, the judgment could not have been validly rendered.'" *Faraday*, 596 F. Supp. 2d at 515 (quoting *Joyner*, 255 Conn. at 490); *see also Heussner*, 94 Conn. App. 569, 573 ("An issue is *necessarily determined* if, in the absence of a determination of the issue, the judgment could not have been validly rendered . . . If an issue has been determined, but the judgment is not dependent upon the

---

[2] Ms. Gladstein also sought expert examination of the Trust and the two amendments to the Trust. *Id.* at 65. The Trust was inspected by an expert at the Court. *Id.*

determination of the issue, the parties may relitigate the issue in a subsequent action.") (emphasis and alteration in original). Judge Ganim's determination had to be necessary to the judgment because the Probate Court decided the validity of the Will. In the Probate Decree, after the above determination, Judge Ganim ordered and decreed that the written will "[wa]s duly proved as the decedent's will, and . . . [wa]s approved and admitted to probate as the Last Will and Testament of the decedent." Probate Decree at 65-66 (emphasis omitted).

Taken together, the issue of the validity of the Will as well as Ms. Klavir's testamentary capacity and the presence of undue influence are subject to collateral estoppel.

Ms. Gladstein argues that "[t]here has been no final judgment or finding of fact that would bar the prosecution of the claims against the Goldfield Defendants under the doctrines of *res judicata* or collateral estoppel" and that "[t]here has not been a final judg[ment] (or any judgment) that determines the relevant facts that are the subject of [her] claims against the Goldfield Defendants." Pl.'s Resp. at 5, 8. Ms. Gladstein's remaining claims against the Goldfields include intentional interference with inheritance, negligence/breach of duty of care, breach of fiduciary duties, undue influence/coercion, fraudulent concealment, civil conspiracy, reckless indifference/willful and wanton misconduct, larceny, intentional infliction of emotional distress, and negligent infliction of emotional distress. *See* Compl. Each of these claims hinge on Ms. Gladstein's allegations that "Frances Klavir was not of sound mind and was not legally competent to execute [the Will and Second Amendment]," *id.* ¶ 14 and the Defendants "contravene[ed] the intent of Frances Klavir with regard to the bequest and distribution of her assets," *id.* ¶ 22; *see also id.* (incorporating these allegations for all counts).

As discussed above, however, Judge Ganim in the Probate Court already decided the issues of Ms. Klavir's testamentary capacity and the presence of undue influence in determining the

validity of the Will. And although there does not appear to be a final judgement on the Second Amendment, the underlying factual findings necessary to invalidate it – again Ms. Klavir's testamentary capacity and/or the presence of undue influence – have been determined. Without a finding that the Will is invalid, or that Ms. Klavir did not have testamentary capacity, or that undue influence occurred, Ms. Gladstein's claims cannot succeed. As a result, under the doctrine of collateral estoppel, these facts were "necessarily determined in the [probate court]" and Ms. Gladstein is "attempting to relitigate th[e]se facts in th[is] proceeding." *Ventres*, 301 Conn. at 206 (internal citations and alterations omitted).

Accordingly, in furtherance of "judicial economy," *S.E.C. v. Monarch Funding Corp.*, 192 F.3d 295, 303 (2d Cir. 1999) ("The principal virtue of collateral estoppel is self-evident: it promotes judicial economy by reducing the burdens associated with revisiting an issue already decided"), and under its "inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases," *Dietz v. Bouldin*, 136 S. Ct. 1885, 1892 (2016), the Court will dismiss Ms. Gladstein's remaining claims against the Goldfields on collateral estoppel grounds.

## IV.    CONCLUSION

For the foregoing reasons, this case is **DISMISSED**.  The Clerk of Court is respectfully directed to close this case.

**SO ORDERED** at Bridgeport, Connecticut, this 21st day of May, 2021.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE